Opinion delivered March 5, 1884.

[No. 1627.]

MOSE CRAWFORD *v.* THE STATE.

1. PRIVILEGE OF COUNSEL.—In the discussion of the case to the jury, counsel are entitled to employ only legitimate argument. Vituperation and vilification are irrelevant and unjust. Nor is it legitimate to menace the jury with the terrors of popular opinion, or with the dangers to be apprehended from a verdict adverse to the views of the advocate. The weight and credibility of the evidence are the matters proper for the consideration of the jury, regardless of imaginary consequences prognosticated by counsel.

2. SAME—PRACTICE.—When counsel transcend the limits of legitimate argument to the jury, it is the right of the opposing counsel to object and to invoke the intervention of the court; but though no objection be interposed, the purity of public justice demands that the courts should suppress such abuses of the privilege of counsel.

3. Practice of the Court of Appeals.—A conviction obtained by dia-
tribe and denunciation is unlawful. When the record on appeal shows
that such means were tolerated by the trial court, to the prejudice of the
rights of the defendant, this court does not hesitate to set aside the con-
viction.

Appeal from the County Court of Waller. Tried below before
the Hon. H. C. Tompkins, County Judge.

The information in this case charged the theft of personal
property under the value of twenty dollars, the property of one
J. H. Munn. The penalty imposed was one day in jail and a
fine of one hundred dollars.

The testimony for the prosecution was, in substance, that the
prosecuting witness had two men breaking ground for him,
using implements which he furnished. It had been the custom
of the workmen to leave their plows, harness, etc., in the field
over night. On or about the morning of March 5, 1882, there
was missed from the field one Cotton King plow, one double-
tree, two single trees, two sets of harnesss and trace chains, with
back band attachments. The tracks of a horse and of a foot-
man were discovered, leading from where the plow had been
left to a point on the fence where the plow, etc., were taken out
of the field. These tracks were followed some distance in the
direction of the town of Louisville, but finally were lost. On or
about August 2, 1882, because of information received, the prose-
cuting witness, J. H. Munn, obtained a search warrant to search
the premises of the defendant, who lived on the Horton place.
Defendant pointed out the crib in which was kept the farming
implements belonging to the place. Here was found two pairs
of harness and trace chains with back bands, which were identi-
fied as part of the stolen property. A double tree with an old
single tree was also found there at the time, but not identified.
Another double tree and single trees were found at the fence,
and taken by the prosecuting witness and his party. These
were subsequently claimed by Horton. On the following fourth
day of the month, witness and his son went again to Horton's,
and found the old single tree previously found in the crib. It
was then recognized as part of the stolen property. They found
also a double tree and single tree on the wagon of defendant,
the same being part of the stolen property. The identity of this
property was testified to by three or four witnesses.

The witness, Horton, testified, for the defense, that the defend-
ant worked with him during the year 1883, commencing about
January 1.   He saw the defendant purchase a plow from Mr.
Alsberry, which was the only plow he had ever used.   Witness
saw in his crib the old harness, double trees and single trees,
etc., claimed by the prosecuting witness.   He did not know how
they got there, or by whom they were brought there.   This har-
ness had the appearance of having been previously used.

The sheriff of Waller county testified, for the defense, that in
his opinion the mark, PL connected, by which one of the State's
witnesses claimed to identify one of the single trees, was a fresh
and not an old brand; that it was not as old as even two or three
weeks.   The trace chains identified as part of the stolen pro-
perty were of the usual make, and could not be distinguished
from others of like make.

Lizzie Gordon, the aunt of the defendant, testified that she
had raised defendant from his infancy to the time that he went
to work for himself.   She then gave him a set of old harness.
She had examined the harness involved in this controversy, and
from its appearance she was confident it was the same she gave
the defendant.

The motion for a new trial assailed the charge of the court,
the action of the court in refusing charges asked, and denounced
the verdict as against the charge and the evidence.

*Harvey & Brown,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE.   We have examined all the grounds relied
upon by the appellant for a reversal, and are of the opinion that
none are well taken except that which is contained in the third
bill of exceptions.

From this bill it appears that R. E. Hannay closed the argu-
ment for the prosecution, and in his closing remarks he turned
to the defendant and said:   "You black thief, you are a thief, a
thief as black as hell itself."   Then, turning to the jury, he said:
"Gentlemen, if you don't convict this man you had better throw
open the jail doors, tear down our court houses, and burn up our
law books; because if you acquit such men, and that is to be the
law in Waller county, people will flock to Waller county from
North and South Texas to become thieves.   All good men in

Waller county know this man ought to be convicted, and it is your duty to do so. I feel an interest in this case, and want to see this man convicted." To which the defendant then and there objected, to which the court replied: "I will give you a bill of exceptions    *    *    *    ." To this bill the learned judge presiding appends this explanation: "I do not remember the foregoing to be the precise language used by R. E. Hannay, one of the prosecuting attorneys, but in the main it is correct."

Whether the appellant was white or black certainly had nothing whatever to do with his guilt. If black, he had a right to demand a fair trial, just such a trial as is intended by the law to be given to any and all of the citizens of this State. That he was a black thief, or a thief at all, was the turning issue in question, and, instead of denouncing appellant as such, it was the duty of counsel representing the State to attempt to prove him a thief from the law and evidence introduced on the trial. This colored man's mouth was closed; his counsel had made his argument, and had no chance to reply. Was it proper, right or just for counsel, in the closing argument, to thus attack the defendant? We think not.

The consequences flowing from a failure to convict this negro, to Waller county, if the attorney be correct in his prognostications, may be terrible indeed. For it would be a dire calamity, truly, for all those living in North and South Texas, who purpose to engage in the avocation of theft, to flock to this county. But certainly these consequences to this county were not foreseen by defendant when he stole the plow and harness, if he is guilty of the theft. Defendant is very unfortunate in presenting a case before the jury, in which a wrong verdict would entail such fearful consequences to his county.

How the learned counsel ascertained that all of the good men in Waller county knew that defendant was guilty, or should be convicted, the record does not inform us. What had the knowledge and opinion of all the good men in the county to do with this case?

Under our Code, the citizens of this State are not bound by the knowledge and opinions of good or bad men, unless the knowledge and opinions were ascertained from them on the witness stand. And we are of the opinion that to thus appeal to the knowledge of all the good men of Waller county, in order to secure a conviction of defendant, was wrong, and we will not sanction a verdict obtained by such methods. Bearing upon all

the matter objected to by the defendant which appears in his bill of exceptions, we refer with approbation to what is said by Mr. Bishop, in sections 975a and 975b of his work on Criminal Procedure.

Article 975a reads as follows: "Counsel are entitled to employ with the jury only legitimate argument. To indulge in vituperation and abuse of the party, or urge that if the defendant is not convicted the prosecutor will be ruined or be deemed convicted of perjury, or influence them with the idea that justice has not been well administered before, and therefore the defendant must not be acquitted, is irrelevant while it is unjust. 'The jury should decide,' says Crompton, judge, 'upon the case solely upon the weight or credibility of the evidence, and not with reference to the supposed consequences to one side or the other.' Of the like sort is the expression by defendant's counsel, of belief in his client's innocence."

Article 975b comments as follows: "If counsel undertake what is thus inadmissible in argument, it is the right of counsel on the other side to object. And whether objection is made or not, the court may stop it; and, the author submits, a due regard for the purity of public justice demands that courts should oftener interfere in this way than is common. Not in all circumstances can an error of this sort in the presiding judge be corrected by a higher tribunal, but in some it can do so by granting a new trial."

When it appears that an error of this sort is calculated to injure the defendant, this court has not hesitated to reverse the judgment. What benefit could inure to the defendant by the court below giving him a bill of exceptions, we cannot imagine, unless the learned judge desired this court to pass upon the matter again. For in the Hatch case, 8 Texas Court of Appeals, 416; the House case, 9 Texas Court of Appeals, 565, and the Conn case, 11 Texas Court of Appeals, 391, matter of the same character came before us for revision, and we in those cases reversed the judgment, holding such means for conviction unlawful, and that we would not sanction such methods.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*